UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TOBIN DON LEMMONS, | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. 23-CV-0019-CVE-CDL |
| | ) | <u>BASE</u> <u>FILE</u> |
| v. | ) | |
| | ) | |
| DOUG GROVE-MILLER, Pawnee County | ) | Consolidated with: |
| Detention Officer, | ) | |
| JERRY SKIDGEL, Pawnee County | ) | Case No. 23-CV-0503-CVE-CDL |
| Commissioner, | ) | |
| DARRIN VARNELL, Pawnee County Sheriff, | ) | |
| DETENTION OFFICERS, | ) | |
| WILLIAM HAWTHORNE, Bystanders, | ) | |
| CAMERON DENNIS, Bystanders, | ) | |
| CITY OF PAWNEE, | ) | |
| NICK MAHONEY, Undersheriff, | ) | |
| JIMMY STEELE, Jail Administrator, | ) | |
| MALACHI MARTIN, APRN, | ) | |
| MELODY COLLINS, LPN, | ) | |
| GENTNER DRUMMOND, | ) | |
| ADMINISTRATIVE HEAD OF STATE | ) | |
| AGENCY, | ) | |
| TURN KEY HEALTH CLINICS, LLC, | ) | |
| KEVIN STITT, | ) | |
| PAWNEE COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| ATTORNEY GENERAL OF OKLAHOMA, | ) | |
| OFFICE OF RISK MANAGEMENT AND | ) | |
| ENTERPRISE SERVICE, | ) | |
| STATE OF OKLAHOMA, | ) | |
| PAWNEE COUNTY SHERIFF'S OFFICE, | ) | |
| JANET MORROW, | ) | |
| JOHNNY WAGONER, | ) | |
| | ) | |
| **Defendants/Consolidated** | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Tobin Don Lemmons, a self-represented Oklahoma prisoner,[1] claims that Pawnee County officials and employees and medical providers violated rights guaranteed to him by federal and state law while he was detained at the Pawnee County Jail in Pawnee, Oklahoma.  Lemmons first sought relief in federal court by filing a complaint for violation of civil rights, pursuant to 42 U.S.C. § 1983, asserting federal and state law claims against several defendants.  Dkt. # 1, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  Lemmons later sought relief in state court by filing a petition, pursuant to the Governmental Tort Claims Act ("GTCA"), OKLA. STAT. tit. 51, § 151, et seq., asserting nearly identical federal and state law claims against many of the same defendants that he sued in federal court.  Dkt. # 2-2, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.  Some defendants removed the state action to federal court, and this Court consolidated Lemmons's federal action and the removed action.  Dkt. ## 2, 27, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.

This matter is before the Court on nine motions that were filed before consolidation:  (1) a motion to dismiss filed by defendant Jerry Skidgel (Dkt. # 46, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL); (2) a motion to dismiss filed by defendants Malachi Martin and Melody Collins (Dkt. #51, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL); (3) a motion to dismiss filed by defendant Darrin Varnell (Dkt. # 53, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL); (4) a motion to dismiss filed by defendants Cameron Dennis, Nick Mahoney, and Jimmy Steele (collectively, "jail defendants") (Dkt. # 58, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL); (5) a motion to dismiss filed by defendant Turn Key Health

---

[1] Because Lemmons appears without counsel, the Court liberally construes his filings.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the Court does not act as his advocate.  Id.

Clinics, LLC ("Turn Key") (Dkt. # 7, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL);

(6) a motion to quash service filed by defendant Malachi Martin (Dkt. # 8, <u>Lemmons v. Melody et
al.</u>, No. 23-CV-0503-CVE-CDL); (7) a motion to dismiss filed by defendants the Pawnee County

Board of Commissioners, the Pawnee County Sheriff's Office, Darrin Varnell, and Jerry Skidgel

(collectively, "county defendants") (Dkt. # 15, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-

CDL); (8) a motion to dismiss filed by defendant Kevin Stitt (Dkt. # 20, <u>Lemmons v. Melody et
al.</u>, No. 23-CV-0503-CVE-CDL); and (9) a motion to dismiss filed by defendant Gentner

Drummond (Dkt. # 21, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL).  Lemmons did

not respond to these motions.  This matter also is before the Court, <u>sua sponte</u>, under the screening

provisions of 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

## I.    Procedural background

In January 2023, Lemmons filed a complaint for violation of civil rights in this court,

asserting federal and state law claims against eight defendants.  Dkt. # 1, <u>Lemmons v. Grove-
Miller et al.</u>, No. 23-CV-0019-CVE-CDL.  With leave of Court, Lemmons later added more

defendants, including Turn Key, Martin, and Collins (collectively, "Turn Key defendants").  Dkt.

## 10, 17, 43, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL.  The operative

complaint in the federal action is the amended complaint that Lemmons filed in June 2023

(hereafter, "federal complaint").  Dkt. # 26, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-

CVE-CDL.  Lemmons identifies the following defendants in the federal action:  (1) Doug Grove-

Miller, a former Pawnee County Sheriff's Office Detention Officer; (2) Jerry Skidgel, a Pawnee

County Commissioner ("Commissioner Skidgel"); (3) Darrin Varnell, the Pawnee County Sheriff

("Sheriff Varnell"); (4) Detention Officers; (5) William Hawthorne; (6) Cameron Dennis; (7) the

City of Pawnee; (8) Nick Mahoney, the Pawnee County Undersheriff ("Undersheriff Mahoney");

(9) Jimmy Steele, a former Pawnee County Jail Administrator; (10) Melody Collins, a nurse; and (11) Malachi Martin, a nurse.[2]

In August 2023, Lemmons filed a petition in Pawnee County District Court Case No. CJ-2023-00057 (hereafter, "state petition"), asserting federal and state law claims against fifteen defendants: (1) Collins; (2) Oklahoma Attorney General Gentner Drummond ("Attorney General Drummond"); (3) the Administrative Head of State; (4) Turn Key; (5) Commissioner Skidgel; (6) Oklahoma Governor Kevin Stitt ("Governor Stitt"); (7) the Pawnee County Board of Commissioners ("the Board"); (8) the Attorney General of Oklahoma; (9) Martin; (10) the Office of Risk Management and Enterprise Service; (11) the State of Oklahoma; (12) Sheriff Varnell; (13) the Pawnee County Sheriff's Office; (14) Janet Morrow; and (15) Johnny Wagoner.[3]  Dkt. #

---

[2] In his original complaint, Lemmons did not identify Turn Key as a defendant.  Dkt. # 1. The Court later granted his request to add Turn Key as a defendant.  Dkt. # 10, at 3, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  Thereafter, the Court granted Lemmons leave to file an amended complaint, and he filed the federal complaint.  Dkt. # 25, 26, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  In the federal complaint, Lemmons added a new defendant to the case caption that he identified as "Turn Key Medical Provider-Dr. Mal," but he did not add to the case caption the three defendants he obtained leave to add, namely, Turn Key, Undersheriff Mahoney, and Steele.  See Dkt. # 25, at 2 & n.1, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  Because Lemmons appeared to identify the defendant previously named as "Turn Key Medical Providers" by reference to a more specific person, "Dr. Mal," the Court directed the Clerk of Court to terminate Turn Key as a party in the federal action.  Id.  The Court subsequently received a notice of party name correction identifying the defendant "Turn Key Medical Provider, Dr. Mal" as Malachi Martin, APRN.  Dkt. # 34, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  Martin and Collins are Turn Key employees.  Dkt. ## 26, 34, 51, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.

[3] The number of defendants Lemmons intended to sue in the removed action is unclear. The state court docket sheet lists twelve defendants.  Dkt. # 2-1, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.  When the case was removed to federal court, fifteen defendants were listed on the docket sheet.  The Court lists those same fifteen defendants here even though Lemmons may not have intended to identify Attorney General Drummond and the Attorney General of Oklahoma or Governor Stitt and the Administrative Head of State Agency as four separate defendants.  Dkt. # 2-2, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.

2-2, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.[4]  The Turn Key defendants removed the state case to federal court.  Dkt. # 2, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.

Commissioner Skidgel, Sheriff Varnell, and the jail defendants move to dismiss the federal complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. ## 46, 53, 58, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL.  Martin and Collins move to dismiss the federal complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Dkt. # 51, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL.

Turn Key moves to dismiss the state petition under Rule 12(b)(6) for failure to state a claim and, alternatively, seeks dismissal of the removed action on the ground that it is duplicative with Case No. 23-CV-0019-CVE-CDL.  Dkt. # 7, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.  Martin moves to quash service of the state petition, asserting that he was not properly served.  Dkt. # 8, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.  The county defendants move to dismiss the state petition in part, under Rule 12(b)(1) for lack of jurisdiction, and in part, under Rule 12(b)(6) for failure to state a claim.  Dkt. # 15, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.  Governor Stitt and Attorney General Drummond move to dismiss the state petition under Rule 12(b)(6) for failure to state a claim.  Dkt. ## 20, 21, <u>Lemmons v. Melody et al.</u>, No. 23-CV-0503-CVE-CDL.

## II.   Plaintiff's allegations

Lemmons was detained at the Pawnee County Jail (hereafter, "the jail"), as a pretrial detainee, from August 28, 2021, to October 19, 2021; from October 27, 2021, to September 23,

---

[4] Melody Collins is the defendant identified as "Melody" in the case name of the removed action because Lemmons originally identified Collins as "Nurse Melody."

2022; from October 27, 2022, to February 14, 2023; and from February 28, 2023, to March 24, 2023.  Dkt. # 26, at 5, 9, 12, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 1-2, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.[5]  In both pleadings, Lemmons alleges that some civil rights violations occurred throughout these detention periods and that some violations occurred on specific dates.  Lemmons identifies four counts in the federal complaint and three of those same counts in the state petition.  Because Lemmons relies on the same core facts in each pleading, the Court draws the following pertinent facts from both pleadings unless otherwise noted.

### A.    Religious rights (count I, federal complaint; count II state petition)

During each period that he was detained at the jail, Lemmons "advised the defendants of his chosen religion as a Messianic Jew and that he required an undefiled kosher diet."  Dkt. # 26, at 5.  "The defendants," including two jail administrators, Steele and Cody Lewis (a nondefendant), and a chaplain, Wagoner, denied Lemmons's requests for kosher meals, a Tanaka (his chosen religious text), and religious services, and prevented him from sending mail to "the Tabernacle and Rabbi" because mail "never leaves the jail."  Id. at 5-6, 12-13; Dkt. # 2-2, at 2.  Wagoner "allowed that [Lemmons's] religion was based on the first 5 books of the Old Testament when [Lemmons] requested a bible of his chosen religion under O.S. 57, § 5 of the Oklahoma statutes and [Lemmon's] request was denied for the kosher diet, the Tanaka, and the religious services."  Dkt. # 2-2, at 2.

Steele and Undersheriff Mahoney alleged that "all food" served at the jail was kosher and that "their handling of [Lemmons's] food was within the Jewish guidelines."  Id.  At some point,

---

[5] Hereafter in section II, the Court refers to the federal complaint (Dkt. # 26) and the state petition (Dkt. # 2-2) without the corresponding case numbers.  For consistency, the Court's citations refer to the CM/ECF header pagination.

Lemmons used a "slip of paper" to ask Steele why he was not being provided a kosher diet, and Steele responded, "We don't serve pork, you['re] good." Dkt. # 26, at 5. Even if pork was not served, the food provided by the jail "was not handled within the Jewish guidelines for an undefiled diet." Id. In mid-July or August 2022, a prisoner became angry about "unacceptable" food and "small portions," defecated on a food tray, and sent the tray out with the lunch trays, "defiling everyone's diet 'had they been on a kosher tray.'" Id. "[J]ail staff" observed this incident. Id. After this incident, Lemmons "sent out another slip of paper" requesting a kosher diet and Steele responded, "Yeah OK!" Id. Lemmons "had conversations with" Steele "up until" Steele was "dismissed" from his position as the jail administrator. Id. at 6. Steele falsely stated that "all their food from Tiger commissary is kosher." Id. Prisoners at the jail are fed meat by-products "that specifically state on their labeling "NOT FIT FOR HUMAN CONSUMPTION," including "DEER OATS as a replacement for OATMEAL," "which is definitely not kosher." Id. The jail has "no dietician in their food service department and still the claim is that all food from Tiger Commissary is kosher." Id. The jail has "no certified kosher cook, all food is handled by county trustees." Id.

Steele "would place" Lemmons "in tumultuous situations with other inmates in an effort to get [Lemmons] in fights over his religious beliefs and the standing up for his civil rights when no one else would." Dkt. # 26, at 6.

Lemmons filed grievances about his religious rights. Dkt. # 26, at 5-6, 20-21. "[A]ll [of his grievances] disappeared each time and there was never no action taken." Id. at 5. Ashley Treat (a nondefendant) marked some grievances as "REJECTED on the N.C.I.C. communications K.I.O.S.K. which has now also disappeared." Id. In one grievance, dated December 8, 2022, Lemmons alleged that he had attempted to informally resolve his "issue concerning a kosher

undefiled diet" but the matter remained unresolved.  Id. at 20.  Kelly Trammel (a nondefendant), who succeeded Steele as jail administrator, responded to Lemmons's grievance on February 24, 2023, stating that "[o]ur food provider (Tiger) is based on a kosher diet but doesn't offer pre-made meals."  Id.  In a second grievance, dated December 8, 2022, Lemmons alleged that he requested a Tanaka, that he spoke with Wagoner "to handle [his] complaint informally" and that he filed a request to staff "which was rejected by an unknown jail official."  Id. at 21.  Trammel's response to the second grievance, dated February 24, 2023, states:  "Copies of grievances given to me by [Lemmons] on 2-22-23, first time hearing of this."  Id.  Lemmons also attempted to resolve his complaints with Undersheriff Mahoney.  Id. at 6.  Undersheriff Mahoney and Sheriff Varnell "neglected to answer [his] grievances" and did not otherwise resolve Lemmons's complaints.  Id.  According to Lemmons, the Pawnee County Sheriff's Office "fails to adequately train and supervise any of its jail staff and will hire any warm blooded individual that can perform/provide a service, presumptively without proper background checks."  Id.

## B.    Assault and battery (count II, federal complaint; count I, state petition)

On November 21, 2022,[6] Grove-Miller, a detention officer, shot Lemmons with a non-lethal taser gun "twice [at] point blank range" for "no apparent reason[]" while Lemmons was "in an isolation cell naked" or "partially naked."  Dkt. # 26, at 11-13, 22-23; Dkt. # 2-2, at 1.  Two other detention officers, Hawthorne and Dennis, the latter of whom was in the jail tower, witnessed this incident.  Dkt. # 26, at 11, 13; Dkt. # 2-2, at 1.  Hawthorne "did not participate in any of the sequence of events" that resulted in the tasering incident.  Dkt. # 26, at 23.  Hawthorne and Dennis

---

[6] In the state petition, Lemmons identifies the date of the tasering incident as November 12, 2022.  Dkt. # 2-2, at 1.  But Lemmons repeatedly states in the federal complaint that he ultimately determined, after receiving copies of the serious incident reports, that the date of the incident was November 21.  Dkt. # 26, at 11-13.

told Lemmons that Grove-Miller's action "was uncalled for," wrote serious incident reports, and notified Sheriff Varnell and Undersheriff Mahoney of the incident. Id. at 11, 23; Dkt. # 2-2, at 1. Sometime after the incident, Grove-Miller apologized to Lemmons, stating "that he was just 'having a bad day' and took it out on [Lemmons]." Dkt. # 2-2, at 1.

As a result of the tasering incident, Lemmons was "rendered unconscious for several days" and in a "delirium state." Dkt. # 26, at 11, 23. Lemmons's "entire left side" went numb, and the incident caused nerve damage. Id. Lemmons has difficulty walking and his left foot "continues to drag as if a 'stroke' occurred." Id. at 11, 13. Both of his shoulders "feel fused and separated from the bone to the extent that [he has] difficulty in raising both arms" and he experiences "excruciating pain as if both shoulders are broken." Id. at 11. Lemmons also "feel[s] like [his] insides are fried." Id. at 13. This incident caused Lemmons to experience "mental issues" and "night terrors." Id. at 11, 13. Lemmons did not receive medical attention for the tasering incident until November 30, 2022. Id. at 23.

Lemmons filed a grievance on December 1, 2022, regarding the tasering incident. Id. at 22-23. In the grievance, Lemmons described Grove-Miller's actions and his resulting injuries and alleged that his requests for information about the tasering incident had been denied. Dkt. # 26, at 22-23. Trammel responded to the grievance on February 24, 2023, stating that the "[i]ssue was resolved by the termination of Douglas Grove-Miller" and that incident reports were available to Lemmons from the front office. Id. at 22.

C.      **Medical care (count III, both pleadings)**[7]

---

[7] Except for the last paragraph of section II.C., the allegations in the federal complaint and state petition regarding Lemmons's medical care at the jail are identical. Compare Dkt. # 26, at 4, 7, with Dkt. # 2-2, at 3-4. The allegations in the last paragraph of section II.C. are included only in the federal complaint. The Court's citations in section II.C. thus refer only to the federal complaint.

Lemmons "suffers from G.T.C. and P.N.E.S. seizure disorders." Dkt. # 26, at 4.  When Lemmons was booked into the jail on October 27, 2022, he was taking two prescription medications, Xanax and Neurontin, to treat these disorders.  Id.  Turn Key, the jail's medical provider, considers Xanax a narcotic medication.  Id.  According to a jail policy entitled "Prescription Medications," a prisoner booked into the jail with a narcotic medication "will be allowed to finish off the medication as prescribed until [the medication is] gone," but "will not be allowed any refills and will have to put in a 'ticket' to [Turn Key] to get a different medication." Id.  From October 27, 2022, to November 12, 2022, "officials at the jail" and Turn Key allowed Lemmons "to be taken off" of Neurontin and Xanax.  Id.  "[T]he officials allowed [Lemmons] to lay in an isolation cell and have back to back seizures from the denial of his medication for his seizure disorder."  Id.  Lemmons's medications "could [have] prevented [him] from [having] numerous seizures but the officials withheld medication for several weeks" in violation of their own policy.  Id.  Both medications require "tapering off" to avoid severe withdrawals.  Id. Lemmons "went without sufficient tapering off and experienced very cruel and unusual punishment at the hands of officials."  Id.

On January 18, 2023, Lemmons had "a G.T.C. seizure."  Id. at 7.  Collins broke approximately ten ammonia capsules and "shove[d] them in [Lemmons's] nose inflicting cruel and unusual punishment while refusing to call emergency medical technicians."  Id.  Collins conferred with Martin "numerous times" about transporting Lemmons to a hospital.  Id.  For two hours, Martin "refused to allow orders to call an ambulance."  Id.  During that time, Lemmons had convulsions and "a full blown seizure that could have resulted in death as there was no immediate medical attention given to get [him] to the hospital in their efforts to save the County money."  Id. After two hours, Martin and Collins "finally called for an ambulance."  Id.  One hour after he

10

arrived at the hospital, Lemmons regained consciousness "and the defendants were ridiculed for putting [his] life in jeopardy" and "leaving [him] in a state of unconsciousness for over a two hour period." Id. "[Lemmons's] motor skills have drastically slowed and the extent of permanent damage is at this time unknown." Id. The Pawnee County Sheriff's Office refused to send Lemmons for a follow up appointment. Id. For two days after his return to the jail, the Pawnee County Sheriff's Office refused to give Lemmons "the medication sent back to sustain his seizures" and Lemmons continued to have mini seizures. Id. "Staff" ignored Lemmons after he returned from the hospital. Id.

"Staff tormented [Lemmons] and neglected to administer medications prescribed by the Stillwater attending physician." Id. at 7-8. "Turn Key medical providers" were "negligent with their inadequate medical treatment of [Lemmons's] Lennox Gaustaut Syndrome." Id. at 8. Turn Key's nursing staff "are very unprofessional in their conduct, attitude and diagnosis of jail prisoners as to 'whether or not' they are worthy of being scheduled to see their jail physician [Martin]." Id. Turn Key charges Lemmons and other prisoners $10 to speak with nursing staff, $20 for a telehealth visit with Martin, $10 per prescription, and $2.50 per week for dispensing medication at the unit door. Id. Nurses are at the jail only two days per week "and untrained jail staff pass out these medications." Id. Lemmons "several times had been given someone else's medication that caused his throat to swell to the point he could hardly breathe being unaware of what was in the crushed up cocktail of medications administered to him, crushed, and some whole pills not viewable mixed with the crush ordered pills." Id. "Defendants" charge prisoners for medical care even if the prisoners have private or state medical coverage. Id.

**D.      Conditions of confinement (count IV, federal complaint)**

During each period when he was detained at the jail, Lemmons "endured" unconstitutional conditions of confinement because jail administrators "were uncertified for the position." Dkt. # 26, at 9.  At some point, "Jail Administrator Cody Lewis (prior J.A. from Payne County) told Trustee Terry Sparks to cut the rations of food on E Unit in half [and] people continued to lose weight."[8]  Id.  "[P]roblems with the food continues to escalate downhill."  Id.  Prisoners "who request no beans, no onions, no tomatoes, etc.," are given those food items "as a food allergen without being given an S.A.R. test."  Id.

Prisoners "on E unit were locked down in their cells for days on end because [Lewis] was mad."  Id.  The "water was shut off for days" and prisoners were forced to drink brown water.  Id.  "An older black man was placed in cell 5 with another [prisoner] that had MERSA."  Id.  Eventually, Lewis was "fired."  Id.  Prisoners, including Lemmons, filed grievances that "were never responded to by the J.A., undersheriff, [or] the sheriff."  Id.  The jail lost its contract with the federal government because federal authorities received complaints.  Id.

"The Sheriff's Office and its employees" are "unruly" and cause problems for attorneys who visit the jail or make legal calls.  Id. at 10.  "Jail staff" "ignore[e] incoming calls from the public seeking information concerning charges, bond, and public information while sitting at the booking desk."  Id.  "Jailers" are not doing their jobs and are instead "surfing the internet for personal issues or watching movies on county time."  Id.

Lemmons and other prisoners took "cold showers during the winter months of 2021 [and] 2022 due to plumbing problems within the Jail."  Id.  The Board "refused to address these problems" and refused to "hire a licensed plumber to rectify these problems which inflicted cruel

---

[8] Neither Lewis nor Sparks is named as a defendant in either pleading.

and unusual punishment upon [Lemmons] and other [prisoners]."  Id.  "Problems also arose with

toilets, sinks [and] contaminated trash cans specifically on E-unit."  Id.

When he was held in an isolation cell, Lemmons "could hardly draw water from the sink,"

and "[d]efendants ignored [his] grievances and failed to perform visual checks, rotations, record

within prescribed times in accordance to state and federal standards."  Id.

### E.     Plaintiff's Claims

Based on the foregoing factual allegations, Lemmons asserts federal claims under 42

U.S.C. § 1983 for alleged violations of his rights under the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution; under the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 through 2000cc-5; and under

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 through 12213.  Dkt. # 26, at

3, 10, 12; Dkt. # 2-2, at 2, 5.  He asserts state law claims for "assault and battery"[9] and for alleged

---

[9] Under Oklahoma law, the tort of assault and the tort of battery each require a showing that the defendant acted either with the intent to make a harmful or offensive contact with the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact.  Oklahoma Uniform Jury Instructions-Civil (OUJI-CIV) 19.1, 19.6; see also Bryson v. Okla. Cnty. ex rel. Okla. Cnty. Det. Ctr., 261 P.3d 627, 631 (Okla. Civ. App. 2011) (discussing jury instructions for torts of assault and battery).  In addition, assault requires a showing that the plaintiff was placed in apprehension of harmful or offensive contact or "was caused to suffer fright and terror," whereas battery requires a showing that the defendant's act resulted in nonconsensual harmful or offensive contact.  Id.  Under the facts alleged, Lemmons's claim is more accurately described as one asserting a tort claim for battery.

violations of his rights under Article I, § 2[10] and Article II, §§ 9[11] and 30[12] of the Oklahoma

Constitution; the Oklahoma Religious Freedom Act ("ORFA"), OKLA. STAT. tit. 51, §§ 251

through 258;[13] and OKLA. STAT. tit. 57, § 5.[14]  Dkt. # 26, at 3, 10, 12; Dkt. # 2-2, at 5.[15]  Lemmons

---

[10] Relevant here, Article I, § 2 of the Oklahoma Constitution provides that "[p]erfect toleration of religious sentiment shall be secured, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship; and no religious test shall be required for the exercise of civil or political rights."

[11] Article II, § 9 of the Oklahoma Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." "

[12] Article II, § 30 provides:  "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

[13] The "ORFA mandates that no governmental entity shall substantially burden a person's free exercise of religion, even if the burden results from a rule of general applicability." Beach v. Okla. Dep't of Pub. Safety, 398 P.3d 1, 5 (Okla. 2017) (citing OKLA. STAT. tit. 51, § 253 (2011)). The "ORFA defines exercise of religion as "the exercise of religion under Article 1, Section 2, of the Constitution of the State of Oklahoma, [ORFA], and the First Amendment to the Constitution of the United States." Id. (footnotes omitted) (alteration in original) (citing OKLA. STAT. tit. 51, §252(2)).  Under the ORFA, a substantial burden is one that "inhibit[s] or curtail[s] religiously motivated practice." Id. at 5 n.18.

[14] Under Oklahoma law, "[t]he keeper of each prison shall provide, at the expense of the county or state, as the case may be, for each prisoner under his charge, who may be able and desirous to read, a copy of the Bible, or New Testament, to be used by such prisoner during his confinement, and any minister of the Gospel, disposed to aid in reforming the prisoners, and instructing them in their moral and religious duties, shall have access to them at seasonable and proper times." OKLA. STAT. tit. 57, § 5.

[15] In both pleadings, Lemmons identifies multiple specific legal bases for his claims against all defendants, with no specificity as to which claims he asserts against which defendants.  He does, however, frame his claims in count III of both pleadings in terms of "cruel and unusual punishment." Dkt. # 26, at 4, 7-8, 13, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 3-4, Lemmons v. Melody et al., No. 23-CV-0503-CVE-CDL.  The Court must liberally construe Lemmons's pleadings because he has no attorney.  But, given Lemmons's specificity in identifying several legal bases for his claims, in both pleadings, the Court does not find it reasonable to read count III of either pleading as asserting any state law claims for medical negligence against the moving defendants.

seeks compensatory, punitive, and nominal damages and injunctive relief.  Dkt. # 26, at 13; Dkt. # 2-2, at 5.

## III.    Discussion

This Court has original jurisdiction under 28 U.S.C. § 1343(a)(3), as to Lemmons's federal claims, and has supplemental jurisdiction under 28 U.S.C. § 1367(a), as to any related state law claims.  In exercising supplemental jurisdiction over state law claims, a federal court applies the substantive law of the forum state.  BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1103 (10th Cir. 1999).  Ordinarily, a federal court should decline to exercise supplemental jurisdiction over state law claims if all federal claims asserted in the same action "disappear early in the litigation." Birdwell v. Glanz, 790 F. App'x 962, 964 (10th Cir. 2020).[16]

The following discussion proceeds as follows.  First, the Court considers, sua sponte, whether any claims or defendants should be dismissed from this consolidated action under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Second, the Court considers the moving defendants' arguments for dismissal.

### A.    Dismissal standards

Most moving defendants seek dismissal under Rule 12(b)(6).[17]  To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct

---

[16] The Court cites this unpublished decision, and all other unpublished decisions herein, as persuasive authority.  FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

[17] As previously stated, some defendants also seek dismissal under Rule 12(b)(1), which permits facial and factual challenges to subject matter jurisdiction, and Rule 12(b)(5), which permits challenges to the sufficiency of service of process.  If necessary to the analysis, the Court will discuss the dismissal standards under these rules below.

necessary to establish plaintiff's claim.  Id. at 556; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  Bell Atl. Corp., 550 U.S. at 555.  When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded factual allegations and construe them in the plaintiff's favor.  Id.  But the court may disregard legal conclusions or conclusory statements that are devoid of factual support.  Id.; Iqbal, 556 U.S. at 678.

When a plaintiff appears without counsel, the court must liberally construe the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Like all plaintiffs, a self-represented plaintiff bears the burden to "alleg[e] sufficient facts on which a recognized legal claim could be based."  Hall, 935 F.2d at 1110.  But the rule of liberal construction eases that burden by permitting the court to overlook basic drafting errors and confusion of legal theories in determining whether the complaint can be "reasonably read . . . to state a valid claim on which the plaintiff could prevail."  Id.  At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable."  Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting Bell Atl. Corp., 550 U.S. at 556).  But dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  Bell Atl. Corp., 550 U.S. at 558.

When a federal court authorizes a plaintiff to proceed with a civil action in forma pauperis, the court has a continuing obligation to dismiss the action, in whole or in part, "at any time" if the court finds that the plaintiff's allegations fail to state a claim on which relief may be granted.  28

U.S.C. § 1915(e)(2)(B)(ii).  Similarly, and "regardless of the prisoner litigant's fee status," a court is obligated to screen a civil complaint filed by a prisoner who seeks relief from a governmental entity, officer, or employee, and the court should dismiss the complaint, in whole or in part, if it fails to state a claim on which relief may be granted.  Plunk v. Givens, 234 F.3d 1128, 1129 (10th Cir. 2000); 28 U.S.C. § 1915A.  The same dismissal standards apply whether the court is considering a Rule 12(b)(6) motion or applying the screening provisions of § 1915(e)(2)(B)(ii) and § 1915A.  Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

**B.     Dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

Under the circumstances of this consolidated matter, this Court's screening obligation under § 1915(e)(2)(B) applies to the federal complaint, but not the state petition, because the Court authorized Lemmons to proceed in forma pauperis in the federal action only.  Cf. Woodson v. McCollum, 875 F.3d 1304, 1305-07 (10th Cir. 2017) (holding that "[s]tate-court plaintiffs whose cases are removed to federal court have no obligation to pay a filing fee" and reasoning that  § 1915(g)'s three-strikes provision, which bars certain prisoners from proceeding in forma pauperis in federal court did not apply to prisoner who did not seek "the federal forum").  But because Lemmons is a prisoner seeking relief, in part, from governmental entities, officers, and employees, § 1915A's screening provision applies to the state petition, regardless of his fee status and even though the state petition arrived in federal court by removal.  See Carr v. Zwally, 760 F. App'x 550, 553, 558 (10th Cir. 2019) (affirming district court's screening and dismissal under § 1915A of prisoner complaint filed in state court and removed to federal court); Plunk, 234 F.3d at 1129 (joining four other circuits "in holding that § 1915A applies to all prison litigants, without regard to their fee status, who bring civil suits against a governmental entity, officer, or employee).

Applying §§ 1915(e)(2)(B)(ii) and 1915A(b), the Court finds that the following claims and defendants shall be dismissed.[18]

### 1.    Claims under Fourth, Fifth, and Eighth Amendments

In both pleadings, Lemmons seeks relief under § 1983 for the alleged violations of his rights under the Fourth, Fifth, and Eighth Amendments.  To state a plausible claim for relief under § 1983, a plaintiff must allege facts demonstrating that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law.  Dodds v. Richardson, 614 F.3d 1185, 1199-1200 (10th Cir. 2010); Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002).

Lemmons states no plausible claims against any defendants for the alleged violations of his rights under the Fourth, Fifth, or Eighth Amendments because neither pleading includes allegations that implicate these constitutional amendments.  See Porro v. Barnes, 624 F.3d 1322, 1324-25 (10th Cir. 2010) (discussing the importance of identifying the correct constitutional provision governing a prisoner's claim).  Lemmons alleges that defendants—most of whom are state or county officials or employees—violated his constitutional rights while he was housed in a county jail as a pretrial detainee by using excessive force against him, interfering with his religious practices, providing inadequate medical care, and housing him in substandard conditions.  At all times relevant to Lemmons's claims, he was a pretrial detainee protected by the Fourteenth Amendment's due process clause, not by the Fourth, Fifth, or Eighth Amendments.  See id. (explaining that the Fourth Amendment "pertains to the events leading up to and including an arrest of a citizen previously at liberty," and that the Eighth Amendment protects "prisoners already

---

[18] In both pleadings, Lemmons does not make explicit which claims he is asserting against which defendants.  In section III.B., the Court treats all claims as being asserted against all defendants.

convicted of a crime"); Koessel v. Sublette Cnty. Sheriff's Dep't, 717 F.3d 736, 748 n.2 (10th Cir. 2013) ("The Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen[th] Amendment applies to actions by state governments.").

The Court therefore dismisses the federal complaint in part, under §1915(e)(2)(B)(ii), and dismisses the state petition in part, under § 1915A(b), (1) as to any Fourth, Fifth, and Eighth Amendment claims asserted against any defendants, and (2) as to any state law claims under Article II, §§ 9 and 30[19] of the Oklahoma Constitution asserted against any defendants.

### 2.    ADA claims

In the federal complaint, Lemmons purports to seek relief under Title II of the ADA.  Dkt. # 26, at 3, 12, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  Title II's protections extend to detainees held in county jails.  Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007); see also 42 U.S.C. § 12131(1) (defining "public entity" to include, inter alia, "any State or local government" and "any department, agency, special purpose district or other

---

[19]  "Article II, Section 30 gives no greater protection than the Fourth Amendment."  Stewart v. State, 442 P.3d 158, 166 (Okla. Crim. App. 2019).  And the prohibitions against cruel or unusual punishment in Article II, § 9 are "identical" to the Eighth Amendment's prohibitions.  Bryson, 261 P.3d at 633.  In Bryson, the Oklahoma Court of Civil Appeals explained that Article II, § 30 protects a pretrial detainee from the use of excessive force from the time of arrest and through the booking process, but not when the pretrial detainee is "being held for trial."  Id. at 633, 638. Because Lemmons represents that he was a pretrial detainee at all times relevant to his claims, the Court finds that his state constitutional claims under § 9 and § 30 should be dismissed for the same reason as his federal claims under the Fourth and Eighth Amendments.

instrumentality of a State or States or local government"). To state a plausible Title II claim, a plaintiff must allege facts demonstrating "that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." Robertson, 500 F.3d at 1193. Under Title II, "[t]he term 'qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The term "disability" broadly covers individuals who either have, or are merely regarded as having, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Lemmons cites the ADA in two portions of the federal complaint and appears to allege, without supporting facts, that all defendants violated the ADA by treating him differently than others "as a human being with mental and physical disabilities." Dkt. # 26, at 3, 12, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL. The Court finds it reasonable to infer that Lemmons's alleges a disability based on his seizure disorders. But Lemmons's broad and conclusory allegation that he was treated differently throughout the time he was detained at the jail does not include any facts showing when he was denied access to programs and services at the jail, who denied him access, or whether any such denial was based on his disability. Robertson, 500 F.3d at 1193; see also Iqbal, 556 U.S. at 678 (explaining that courts considering the sufficiency of pleadings may disregard legal conclusions or conclusory statements that are devoid of factual support). In addition, even if Lemmons had included further factual support, neither Turn Key nor

any individual defendants could be liable for any alleged ADA violations.  See Brooks v. Colo. Dep't of Corr., 715 F. App'x 814, 817-18 (10th Cir. 2017) (reasoning that prisoner's individual capacity claims against three correctional officials for alleged Title II "were properly dismissed because Title II does not create individual liability"); Phillips v. Tiona, 508 F. App'x 737, 754 (10th Cir. 2013) (holding that "Title II of the ADA does not generally apply to private corporations that operate prisons" because the private corporation is not "an instrumentality of government in the same sense as a 'department, agency, or special purpose district'"); Edison v. Douberly, 604 F.3d 1307, 1308-10 (11th Cir. 2010) (collecting cases and concluding that "a private corporation is not a public entity [under Title II of the ADA] merely because it contracts with a public entity to provide some service").

For these reasons, the Court dismisses the federal complaint in part, under § 1915(e)(2)(B)(ii), as to any ADA claims asserted against any defendants.

### 3.    Conditions of confinement

In the federal complaint, Lemmons claims that defendants violated his Fourteenth Amendment right to due process by housing him in substandard conditions.  "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee."  Bell v. Wolfish, 441 U.S. 520, 535 (1979). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment'" "in the constitutional sense of that word."  Id. at 538-39.  Conversely, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that

the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id. at 539.

Without specifying any dates during the multiple periods that he was detained at the jail, Lemmons alleges that he was unconstitutionally punished because: (1) Lewis (a nondefendant) rationed food for prisoners held in the E unit; (2) Lewis kept prisoners on the E unit "locked down in their cells for days on end because he was mad"; (3) "water was shut off for days"; (4) prisoners were "forced" to drink "brown water"; (5) one prisoner was placed in a cell with another prisoner who had a skin infection; (6) there were "problems with the food" including budget issues and issues related to food allergens for some prisoners; (7) attorneys who represented Lemmons and other prisoners had "problems with unruly staff"; (8) jail staff ignored incoming calls to the jail while surfing the internet or watching movies; (9) for two winters in a row Lemmons and other prisoners had to take cold showers due to plumbing issues that the Board refused to fix; (10) "problems also arose with toilets, sinks, and contaminated trash cans specifically on E unit"; and (11) when Lemmons was in an isolation cell, he "could hardly draw water from the sink" and "defendants" did not perform required visual checks or keep proper records. Dkt. # 26, at 9-10, Lemmons v. Grove-Miller et al., No. 23-CV-0019-CVE-CDL.

Whether considered individually or collectively, Lemmons's complaints do not plausibly show that he was subjected to "punishment" in the constitutional sense of that word. Critically, most of his allegations speak generally to conditions experienced by all prisoners who were incarcerated at the jail, requiring the Court to speculate as to the impact, if any, that these alleged conditions may have had on Lemmons. At most, the Court discerns that Lemmons (1) sometimes had to take cold showers, (2) had limited access to water from a sink for an unspecified amount of time that he was held in an isolation cell, and (3) may have witnessed his attorney dealing with

"unruly" jail employees.  On the facts alleged, Lemmons does not state a plausible Fourteenth Amendment due process claim against any defendants arising from the alleged unconstitutional conditions at the jail.  The Court therefore dismisses the federal complaint, under § 1915(e)(2)(B)(ii), as to the Fourteenth Amendment due process claim alleged in count IV asserted against any defendants.

### 4.   Insufficient notice pleading

In each pleading, Lemmons purports to assert claims against several defendants without including any factual allegations that describe any acts or omissions attributable to those defendants or any factual allegations that would otherwise provide fair notice to any of those defendants which, if any, claims Lemmons is asserting against them.  See Robbins, 519 F.3d at 1250 (noting that "the burden rests on the plaintiff[] to provide fair notice of the grounds for the claims made against each of the defendant" and that merely providing "a list of the defendants named individually but with no distinction as to what acts are attributable to whom" makes it "impossible for [individual defendants] to ascertain what particular unconstitutional acts they are alleged to have committed").

In the federal complaint, Lemmons identifies two defendants—Detention Officers and the City of Pawnee—without describing any actions either defendant took or failed to take regarding the violations alleged in counts one through four of the federal complaint.  Dkt. # 26, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  To be fair, some allegations in the federal complaint reference the collective actions of "unruly staff" and "untrained jailers."  Id. at 9-10.  But the Court does not read these vague references to the collective actions of staff or jailers as stating any plausible claims for relief against any specific individuals who might be implicated in any claims that Lemmons purports to assert against the defendant that he identifies as "Detention Officers."

In the state petition, Lemmons identifies seven defendants—the State of Oklahoma, Governor Stitt, Attorney General Drummond, the Attorney General of Oklahoma, the Administrative Head of State Agency, the Office of Risk Management and Enterprise, and Janet Morrow—without describing any actions that any of these defendants took or failed to take regarding the violations alleged in counts one through three of the state petition. Dkt. # 2-2, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.  At most, Lemmons appears to fault Attorney General Drummond, the Office of Risk Management and Enterprise, and (possibly) Janet Morrow, for either improperly processing or denying his tort claims under the GTCA.  Id. at 2.

Based on the foregoing, the Court (1) dismisses the federal complaint in part, under § 1915(e)(2)(B)(ii), as to all claims asserted against Detention Officers and the City of Pawnee; (2) dismisses the state petition in part, under § 1915A(b), as to all claims asserted against the State of Oklahoma, Governor Stitt, Attorney General Drummond, the Attorney General of Oklahoma, the Administrative Head of State Agency, the Office of Risk Management and Enterprise, and Janet Morrow; and (3) concludes that Detention Officers, the City of Pawnee, the State of Oklahoma, Governor Stitt, Attorney General Drummond, the Attorney General of Oklahoma, the Administrative Head of State Agency, the Office of Risk Management and Enterprise, and Janet Morrow shall be terminated as parties.[20]

---

[20] Because the Court has determined that Lemmons states no identifiable claims against Governor Stitt or Attorney General Drummond and that both defendants shall be terminated as parties, the Court denies as moot the motion to dismiss filed by defendant Kevin Stitt (Dkt. # 20, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL) and the motion to dismiss filed by defendant Gentner Drummond (Dkt. # 21, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL).

**C.      Dismissal of claims under Rule 12(b)(6)**

Based on the analysis in section III.B., Lemmons's remaining claims are:    (1) federal claims under the First Amendment's free exercise clause and RLUIPA and related state law claims under Article I, § 2 of the Oklahoma Constitution, the ORFA, and OKLA. STAT. tit. 57, § 5 based on the alleged violations of his religious rights (count I, federal complaint; count II, state petition); (2) federal claims under the Fourteenth Amendment's due process clause for the use of excessive force and related state law claims for the tort of battery based on Grove-Miller's use of a taser gun (count II, federal complaint; count I, state petition); and (3) federal claims under the Fourteenth Amendment's due process clause for deliberate indifference based on the allegedly deficient medical care he received at the jail (count III, both pleadings).

Lemmons seeks to vindicate the alleged violations of his federal rights under § 1983.  As previously stated, to state a plausible claim for relief under § 1983 requires facts demonstrating that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law.  Dodds, 614 F.3d at 1199-1200; Summum, 297 F.3d at 1000.

 Under § 1983, a plaintiff can seek to impose liability against state officials in their individual capacities, in their official capacities, or in both capacities.  When a plaintiff sues a defendant in his or her individual capacity, the defendant "may be subject to personal liability and/or supervisory liability."  Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011).  To impose personal liability a plaintiff must allege facts showing the defendant's "personal involvement in the alleged constitutional violation."  Id.  To "impose liability upon a defendant-supervisor," who did not personally participate in the alleged violation, a plaintiff must allege facts "show[ing] that '(1) the defendant promulgated, created, implemented or possessed responsibility

25

for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" Id. at 1164 (quoting Dodds, 614 F.3d at 1199).

When a plaintiff sues a defendant in his or her official capacity, the suit is "essentially another way of pleading an action against the county or municipality [the official] represent[s]." Porro, 624 F.3d at 1328.  But a county "may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997). Rather, a county may be liable only under a theory of municipal liability.  Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  To state a plausible municipal-liability, or Monell claim, a plaintiff must allege facts demonstrating "(1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation."  Sanders v. Glanz, 138 F. Supp. 3d 1248, 1254 (N.D. Okla. 2015).  "A plaintiff can demonstrate a "municipal policy or custom" through an officially promulgated policy; a custom or persistent practice; a single decision by an official with final decision-making authority; ratification by an official with final decision-making authority of subordinates' decisions; or deliberately indifferent training that results in the violation of plaintiff's federally protected rights."  Gooding v. Ketcher, 838 F. Supp. 2d 1231, 1238 (N.D. Okla. 2012).

### 1.    Turn Key defendants' motions to dismiss

The Court construes Lemmons's allegations in count III of both pleadings as asserting (1) a Fourteenth Amendment deliberate indifference claim against Martin and Collins based on the alleged delay in treatment when Lemmons suffered a seizure in January 2023, and (1) a Fourteenth Amendment deliberate indifference claim against Turn Key, under a theory of municipal liability, (a) based on the alleged delay in treatment by Martin and Collins, and (b) based on the alleged

26

withholding of Lemmons's seizure medications when he was booked into the jail at the end of October 2022.[21]

Regarding medical care, the Fourteenth Amendment's due process clause provides the same protection to a pretrial detainee as the Eighth Amendment's cruel and unusual punishment clause provides to a convicted prisoner.  Strain v. Regalado, 977 F.3d 984, 989 (10th Cir. 2020). Courts "apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim."  Id.  "This standard includes both an objective component and a subjective component."  Id.   To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).   Generally, a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Strain, 977 F.3d at 990 (quoting Clark v. Colbert, 895 F.3d 1258, 1267 (10th Cir. 2018)).  In some cases, a plaintiff can satisfy the objective component by showing that a delay in medical care "resulted in substantial harm."  Mata v. Saiz, 427 f.3d745, 751 (10th Cir. 2005).  To satisfy the subjective component, a plaintiff must show that the defendant knew of and disregarded "an excessive risk" to the plaintiff's health. Strain, 977 F.3d at 990.  Thus, a plaintiff must show that the "defendant was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],' and that

---

[21] As previously noted, the Court does not find it reasonable to read count III of either pleading as asserting any state law claims for medical negligence against the Turn Key defendants. See, supra, n.15.  In addition, the Court agrees with Martin and Collins that Lemmons allegations implicating the Turn Key defendants are limited to the allegations in count III of each pleading. Dkt. # 51, at 6 n.2, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.

the defendant actually drew the inference." Paugh v. Uintah County, 47 F. 4th 1139, 1156 (10th Cir. 2022) (alteration in original) (quoting Strain, 977 F.3d at 990).

Martin and Collins move to dismiss the federal complaint under Rule 12(b)(6), asserting that Lemmons's allegations do not support any plausible Fourteenth Amendment deliberate indifference claims against them.  Dkt. # 51, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  Turn Key moves to dismiss the state petition under Rule 12(b)(6), primarily asserting that Lemmons states no plausible Monell claims against Turn Key.  Dkt. # 7, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.[22]

For the following reasons, the Court finds that Lemmons states no plausible Fourteenth Amendment claims against the Turn Key defendants.

### a.      Claims against Martin and Collins

First, the Court finds that Lemmons states no plausible deliberate indifference claim against Martin and Collins.  Martin and Collins concede that Lemmons's allegations satisfy the objective component of his deliberate indifference claim.  Dkt. # 51, at 3, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  The Court agrees that component is satisfied.  Lemmons's allegations show that he has a serious medical need based on his diagnosed seizure disorders for which he takes prescribed medications.  Martin and Collins contend, however, that Lemmons's

---

[22] Turn Key also asserts that the removed action should be dismissed with prejudice because "th[e] claims in [the removed action] are identical to and duplicative of those in" the federal action.  Dkt. # 7, at 1, 8-9, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL. Because this Court consolidated the federal action and the removed action after Turn Key filed its motion to dismiss, the Court finds that Turn Key's request to dismiss the removed action as duplicative litigation is moot.  And, while Turn Key was terminated as a defendant in the federal action and thus did not file a motion to dismiss the federal complaint, the Court agrees with Turn Key that Lemmons's allegations and claims in count III regarding the medical care he received at the jail are essentially identical in both pleadings.  The Court will therefore apply § 1915(e)(2)(B) in tandem with Turn Key's Rule 12(b)(6) arguments to evaluate the sufficiency of the allegations in the federal complaint as to any federal claims asserted against Turn Key.

allegations fail to satisfy the subjective component because (1) his most specific allegation is that Martin and Collins "did not immediately call for [Lemmons] to be transferred to an outside facility for treatment"; (2) his allegations show that Collins provided him timely treatment at the jail before the decision was made to transfer him to an outside facility; and (3) his allegations fail to show that any delay in treatment resulted in substantial harm because he "does not indicate whether it was Nurse Collins'[s] or Mr. Martin's treatment that . . . caused his motor skills to deteriorate." Id. at 5-8.

This last point is not well-taken.  In the same paragraph describing the actions and omissions of Martin and Collins, Lemmons alleges that their actions left him "in a state of unconsciousness for over a two hour period" and that his "motor skills have drastically slowed and the extent of permanent damage is at this time unknown." Dkt. # 26, at 7, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  In context, Lemmons's allegations tie these harms to the alleged failures of Martin and Collins to promptly send him to the hospital when he began having a seizure.  Nonetheless, Lemmons's remaining allegations do not plausibly show that any delay in sending Lemmons to the hospital violated the Fourteenth Amendment.  "The focus of the subjective component of the deliberate indifference inquiry is the mental state of the defendant regarding the risk of harm." Est. of Beauford v. Mesa Cnty., 35 F.4th 1248, 1267 (10th Cir. 2022).  To satisfy this component, a plaintiff must allege facts showing that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Id. (alterations in original) (quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)).  Lemmons alleges that he had a seizure on January 18, 2023, that Collins administered treatment (ammonia capsules), and that Collins repeatedly conferred with Martin over a two-hour period about whether it was necessary to transfer Lemmons to a hospital.  Dkt. # 26, at 7, Lemmons v. Grove-Miller, et al., No. 23-CV-

0019-CVE-CDL.  Although Lemmons further alleges that Martin and Collins "refused" to send him to a hospital for two hours, id., his allegations do not show that either defendant acted, or failed to act, with deliberate indifference to his need for medical treatment.  At most, Lemmons's allegations suggest that some medical professionals may have more quickly made the decision to transfer him to a hospital.  But a difference of opinion among medical professionals regarding the best course of treatment "is insufficient to make out a constitutional claim."  Est. of Beauford, 35 F.4th at 1274 (quoting Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016)).

Even accepting Lemmons's allegations as true, the Court finds them insufficient to state a plausible Fourteenth Amendment deliberate indifference claim against Martin and Collins.

### b.  Claims against Turn Key

Second, the Court finds that Lemmons states no plausible Monell claim against Turn Key based on the alleged delay in transferring him to a hospital for the seizure he experienced in January 2023.  A plaintiff can state a plausible Monell claim against a private corporation by alleging facts demonstrating "actions [were] taken by subordinate employees in conformance with preexisting official policies or customs."  Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City, 779 F.3d 1141, 1159 (10th Cir. 2015); see also See Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1144 (10th Cir. 2023) (noting that "Monell has been extended to 'private entities acting under color of state law,' such as medical contractors" (quoting Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003))).  However, as just discussed, Lemmons does not plausibly allege that Martin or Collins were deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment.  Nor do any of Lemmons's allegations suggest that Martin and Collins provided allegedly deficient medical care in conformance with a Turn Key policy or custom.  For

those reasons, Turn Key cannot be held liable, under <u>Monell,</u> as to the deliberate indifference claim that Lemmons asserts against Martin and Collins. <u>Seifert</u>, 779 F.3d at 1159.

Third, the Court finds that Lemmons does not state a plausible <u>Monell</u> claim against Turn Key based on the alleged withholding of the prescription medications that Lemmons was taking when he was booked into the jail in October 2022.  Lemmons alleges that Turn Key considers one of Lemmons's prescribed medications, Xanax, to be a narcotic medication.  Dkt. # 26, at 4, <u>Lemmons v. Grove-Miller, et al.</u>, No. 23-CV-0019-CVE-CDL.  Lemmons describes a "jail policy" (not a Turn Key policy) entitled "Prescription Medications," that provides for a prisoner booked into the jail with a narcotic medication "to finish off the medication as prescribed until [the medication is] gone," but "will not be allowed any refills and will have to put in a 'ticket' to [Turn Key] to get a different medication."  <u>Id.</u>  According to Lemmons, Turn Key allowed Lemmons "to be taken off of" Neurontin and Xanax from October 27, 2022, to November 12, 2022.  <u>Id.</u>  During some or all of that period, Lemmons had "back to back seizures from the denial of his medication for his seizure disorder."  <u>Id.</u>  Lemmons alleges that the medications he had with him when he was booked into the jail—Xanax and Neurontin—"could [have] prevented [him] from [having] numerous seizures but the officials withheld medication for several weeks" in violation of their own policy.  <u>Id.</u>  He further alleges that both medications require "tapering off" to avoid severe withdrawals and that he "went without sufficient tapering off."  <u>Id.</u>

Even assuming it would be reasonable to read Lemmons's allegations as suggesting that Turn Key employees, rather than unnamed jail officials, withheld his medications, his allegations further suggest that those employees conformed their actions to a jail policy regarding narcotic medication, not a Turn Key policy.  Thus, as Turn Key argues, Lemmons's allegations do not identify a constitutional harm caused by enforcement of a Turn Key policy.  <u>See Seifert</u>, 779 F.3d

31

at 1159.  Further, while Lemmons alleges that the medications that he had with him when he was booked into the jail—Xanax and Neurontin—were withheld from him, the most plausible reading of his allegations suggests that Turn Key employees tapered off the use of his prescription medications between October 27, 2022 and November 12, 2022.  See Dkt. # 26, at 4, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL (alleging that from October 27, 2022, to November 12, 2022, "officials at the jail" and Turn Key allowed Lemmons "to be taken off" of Neurontin and Xanax).  After establishing the time frame in which he was "taken off" of his prescription medications, Lemmons alleges that this was not a "*sufficient* tapering off" period because he experienced "mini seizures" or other withdrawal symptoms.  Id. (emphasis added).  But even if withholding narcotic medication from a prisoner without "sufficient tapering off" may, in some circumstances, constitute medical negligence, that does not mean that it results in constitutional harm.  See Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation").  For these reasons, Lemmons does not state a plausible Fourteenth Amendment claim against Turn Key based on the alleged withholding of his medications.

Fourth, Lemmons's remaining allegations in count III are included only in the federal complaint and appear to be asserted only against Turn Key.  But they are too general and conclusory to state any plausible deliberate indifference claims against Turn Key.  Lemmons alleges that Turn Key (1) was "negligent with [its] inadequate medical treatment of Lemmons's 'Lennox Gaustaut Syndrome'"; (2) charges Lemmons for medical care; (3) employs "unprofessional" staff; and (4) staffs the jail with nurses only twice a week.  Dkt. # 26, at 8, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  Lemmons further alleges that

when nurses are not available at the jail, "untrained jail staff pass out [prisoner] medications" and that he "several times" received "someone else's medication that caused his throat to swell to the point he could hardly breathe." <u>Id.</u>  Though Lemmons's allegations of understaffing and medication mix-ups are disturbing, the Court does not find them, or Lemmons's general complaints about unprofessional staff and the cost of medical care, sufficient to state any plausible <u>Monell</u> claims against Turn Key.

### c.      Conclusion as to Turn Key defendants

For the reasons stated, the Court concludes that Lemmons's allegations in count III of the federal complaint and the state petition (1) assert only Fourteenth Amendment deliberate indifference claims against the Turn Key defendants and (2) are not sufficient to state any plausible Fourteenth Amendment deliberate indifference claims against them.  The Court therefore grants the motion to dismiss filed by Martin and Collins (Dkt. # 51, <u>Lemmons v. Grove-Miller, et al.</u>, No. 23-CV-0019-CVE-CDL); grants Turn Key's motion to dismiss (Dkt. # 7, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL); and denies as moot Martin's motion to quash service (Dkt. # 8, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL)

### 2.      Jail defendants' motion to dismiss

Lemmons names the jail defendants—Undersheriff Mahoney, Steele, and Dennis—as defendants only in the federal action but he includes allegations against them in both pleadings.[23] The jail defendants move to dismiss the federal complaint as to all federal claims against them, under Rule 12(b)(6), for three reasons, but do not appear to seek dismissal of any related state law

---

[23] It appears that Lemmons initially listed Steele and Undersheriff Mahoney as defendants in the state petition, but then deleted both defendants from the case caption by delineation.  Dkt. # 2-2, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL.  Because no jail defendants are named as defendants in the state petition, the Court considers only whether the allegations in the federal complaint are sufficient to state any plausible claims against the jail defendants.

claims that may be asserted against them in the federal complaint.  They contend:  (1) that Lemmons does not state any plausible federal claims against them, in any capacity; (2) that Lemmons does not state a plausible First Amendment free exercise claim; and (3) that Lemmons does not state a plausible Fourteenth Amendment deliberate indifference claim against them regarding the medical care he received at the jail.  Dkt. # 58, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.[24]  For the following reasons, the Court grants the jail defendants' motion.

### a.    Deliberate indifference claim

First, the Court does not construe the federal complaint as asserting a Fourteenth Amendment deliberate indifference claim arising from Lemmons's medical care at the jail against the jail defendants.  Rather, as the jail defendants argue, Lemmons's allegations in count III regarding his medical care focus on the actions and omissions of the Turn Key defendants.  See Dkt. # 26, at 4, 7-8, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 3-4, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.

### b.    Excessive force claim

Second, the Court does not construe the federal complaint as asserting a plausible Fourteenth Amendment excessive force claim, or a plausible state law tort claim for battery, against

---

[24] The jail defendants also urge dismissal for a fourth reason, but that requires little discussion.  Jail defendants assert that they are not identified as defendants in the federal action. Dkt. # 58, at 1 n.1, 6, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  The record refutes this assertion.  Lemmons identified Dennis as a defendant in the caption of his original complaint and the federal complaint.  Dkt. ## 1, 26, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL. Before Lemmons filed the federal complaint, this Court granted his request to add Undersheriff Mahoney and Steele as defendants.  Dkt. # 17, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  The Court thus directed the Clerk of Court to add both Undersheriff Mahoney and Steele to the federal action as party defendants.  Id.  And, while Lemmons failed to add Undersheriff Mahoney and Steele in the caption of the federal complaint, this Court noted that omission in its order granting Lemmons leave to file the federal complaint.  Dkt. # 25, at 3, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  On this record, the Court rejects the jail defendants' assertion that they were not identified as defendants in the federal action.

the jail defendants.  To state a plausible Fourteenth Amendment excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 396-97 (2015).  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'"  <u>Id.</u> at 397 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).  To state a plausible tort claim for battery, a plaintiff must allege facts showing that the defendant acted either with the intent to make a harmful or offensive contact with the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact, and that the defendant's act resulted in a nonconsensual harmful or offensive contact.  OUJI-CIV 19.6; <u>Bryson</u>, 261 P.3d at 631.  Lemmons alleges that Grove-Miller shot him twice with a taser gun for no reason while Lemmons was on the floor of an isolation cell, that Lemmons suffered harmful injuries, and that Grove-Miller ultimately was terminated for his actions. Dkt. # 26, at  11, 13, 22-23, <u>Lemmons v. Grove-Miller</u>, No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 1, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL.  Accepting Lemmons's allegations as true, Lemmons states a plausible Fourteenth Amendment excessive force claim and a plausible tort claim for battery against Grove-Miller.

But none of Lemmons's allegations in either pleading suggests that Steele was involved in the tasering incident.  Dkt. # 26, generally; Dkt. # 2-2, generally.  And Lemmons describes Dennis only as a "bystander" who witnessed the tasering incident from the jail tower, informed Sheriff Varnell and Undersheriff Mahoney about the incident, and filed a serious incident report.  Dkt. # 26, at  1, 13, 23; Dkt. # 2-2, at 1.  Finally, Lemmons's allegations show that Hawthorne or Dennis, or both, notified Undersheriff Mahoney about the tasering incident after the fact.  Dkt. # 26, at 23. Even accepting these allegations as true, none of them plausibly shows that any of the jail defendants (1) personally participated in the use of force, (3) failed to intervene in the use of force,

35

(4) could be held liable for the use of force under a theory of supervisory liability, or (5) have final policymaking authority regarding the jail's use-of-force policies.  Further, Lemmons fails to state a plausible tort claim for battery against any of the jail defendants because his allegations show that none of the jail defendants either had "harmful contact" with Lemmons or placed him in "apprehension of harmful contact."  Bryson, 261 P.3d at 631.[25]

### c.    Free exercise/RLUIPA claims

Third, the Court does not construe the federal complaint as asserting any plausible claims under the First Amendment or the RLUIPA, or any plausible related state law claims, against the jail defendants.   To state a plausible First Amendment free exercise claim, "a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief."  Williams v. Hansen, 5 F.4th 1129, 1133 (10th Cir. 2021).  But a plaintiff need not allege that the official's conduct, or a prison regulation, "interfere[s] with a tenet or belief that is 'central' or mandated by religious doctrine before a prisoner may state a claim under § 1983."  Kay, 500 F.3d at 1220.  Relevant here, "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,' even if such dietary practices are not doctrinally 'required' by the prisoner's religion."  Id. (quoting LaFevers v. Saffle, 936 F. 2d 1117, 1119 (10th Cir. 1991)).  Ultimately, if the plaintiff shows a substantial burden, "officials must identify a legitimate

---

[25] The same is true as to Hawthorne, an unserved defendant who has not moved for dismissal of the federal complaint and who is not identified as a defendant in the state petition.  In both pleadings, Lemmons mentions Hawthorne only in the allegations supporting his Fourteenth Amendment excessive force and state law battery claims and Lemmons describes Hawthorne as a "bystander" who filed a serious incident report about Grove-Miller's use of the taser gun.  Dkt. # 26, at 1, 11, 13, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 1, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.   In addition, Lemmons alleges in the federal complaint that Hawthorne tried to help Lemmons and "did not participate" in the use of force.  Dkt. # 26, at 13, 23, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  The Court therefore dismisses the federal complaint in part, under 28 U.S.C. § 1915(e)(2)(B)(ii), as to all claims asserted against Hawthorne and concludes that Hawthorne shall be terminated as a party.

penological interest," and "the court must determine the reasonableness of the conduct creating the burden." Williams, 5 F.4th at 1133.  But, at the motion to dismiss stage, "assessment of the sincerity of [a plaintiff's] beliefs [is] premature," and it ordinarily is sufficient for a plaintiff to allege (1) that his beliefs are religious in nature and (2) that the defendant's conduct, or a prison policy, substantially burdened the plaintiff's religious beliefs.  Kay, 500 F.3d at 1219-20.

"RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution'—including state prisoners—'even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" Ramirez v. Collier, 595 U.S. 411, 424-25 (2022) (quoting 42 U.S.C. § 2000cc–1(a)).  The RLUIPA provides "greater protection for religious exercise than is available under the First Amendment." Id. at 424 (quoting Holt v. Hobbs, 574 U.S. 352, 357 (2015)); see also Yellowbear v. Lampert, 741 F.3d 48, 54 (10th Cir. 2014) ("While a RLUIPA plaintiff must show a sincerely held religious belief, the statute protects considerably more than the right to hold that belief in private. RLUIPA protects religious *exercises*.").  But, at the initial pleading stage, the plaintiff's burden under the RLUIPA essentially is the same.  To state a plausible RLUIPA claim, the plaintiff must allege facts showing that a defendant's conduct substantially burdened the plaintiff's "sincerely motivated 'religious exercise.'" Yellowbear, 741 F.3d at 55.

And, under either the First Amendment or the RLUIPA, a substantial burden is one that "(1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious

belief." Yellowbear, 741 F.3d at 55 (describing "substantial burden" in context of RLUIPA claim); see Williams, 5 F.4th at 1133 (acknowledging that "the RLUIPA standards differ from those under the First Amendment's Free Exercise Clause" and explaining that the "difference lies in the type of government interest needed to justify a substantial burden, not what constitutes a substantial burden").

Lemmons's allegations in the federal complaint primarily focus on Steele's alleged conduct in denying his requests for kosher meals.  Dkt. # 26, at 5-6, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.[26]  Lemmons alleges that he is a Messianic Jew, that his faith requires him to eat kosher meals, that Steele repeatedly responded to his requests for kosher meals by falsely stating that the meals served at the jail were kosher, that Lemmons "attempted to resolve his complaints with [Undersheriff] Mahoney," and that Undersheriff Mahoney and Sheriff Varnell "neglected to answer [Lemmons's] grievances."  Id.

Accepting Lemmons's allegations as true, those allegations are sufficient to show that Lemmons has sincerely held religious beliefs that require him to eat kosher meals.  But, for five

---

[26] As previously discussed, Lemmons also alleges in the federal complaint that "defendants" violated his religious rights "by withholding [his] religious diet, bible[,] and worship services," and by "not allowing [him] a kosher diet nor a Tanaka, nor Messianic Jewish services, nor allowing [his] correspondence to the Tabernacle and Rabbi when sent out of the jail in the U.S. Mail [because] the correspondence never leaves the jail."  Dkt. # 26, at 12-13, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  These broad allegations, asserted against all defendants, are not sufficiently developed to state any plausible claims against any defendant.  Iqbal, 556 U.S. at 678; Robbins, 519 F.3d at 1250.  For example, there are no factual allegations identifying who denied Lemmons access to worship services, when he was denied access to worship services, or whether only his religious mail (or possibly all mail) "never" left the jail.  As to the alleged denial of his request for a Tanaka, the grievance Lemmons attached to the federal complaint suggests that this request was denied either by Wagoner or an "unknown jail official."  Dkt. # 26, at 21, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL.  But Wagoner is identified as a defendant only in the state petition, and Lemmons does not assert First Amendment or RLUIPA claims in the state petition.  The Court thus construes the First Amendment and RLUIPA claims, as well as any related state law claims asserted in the federal complaint, as based exclusively, on the alleged denial of Lemmons's request for kosher meals.

reasons, Lemmons's allegations do not state any plausible First Amendment or RLUIPA claims, or any plausible related state law claims, against the jail defendants. First, none of Lemmons's allegations suggest that Dennis was involved in any conduct that substantially burdened Lemmons's religious beliefs or religious exercises. Dkt. # 26, at 5-6, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL. Second, Lemmons's allegations, at most, suggest that Undersheriff Mahoney's involvement was limited to the grievance process regarding the alleged denial of Lemmons's request for kosher meals. Id. A jail official's failure to respond to grievances does not implicate any federal constitutional protections. See Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011) ("There is no independent constitutional right to state administrative grievance procedures."); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (concluding that official's failure to process inmates' grievances, without more, is not actionable under § 1983). Similarly, the mere failure to respond to a grievance about an allegedly substantial burden on Lemmons's religious exercises would not give rise to a RLUIPA claim. Third, Lemmons's allegations do not plausibly suggest that Steele denied his requests for kosher meals or otherwise substantially burdened Lemmons's sincerely held beliefs or his religious exercises. While Lemmons clearly states that his requests for kosher meals were denied, his allegations strongly (and more plausibly) suggest that Steele repeatedly responded to Lemmons's requests for kosher meals, not by denying those requests, but by informing Lemmons that the meals he was being served at the jail were kosher. Dkt. # 26, at 5, Lemmons v. Grove-Miller, No. 23-CV-0019-CVE-CDL; see also, id. at 20 (Trammel's grievance response stating that meals are "based on a kosher diet"). Lemmons's only other allegation regarding Steele's conduct vaguely asserts that Steele placed him in "tumultuous situations with other inmates to get [Lemmons] in fights over his religious beliefs." Id. at 6. Fourth, even assuming Lemmons's allegations could be construed as

sufficient to state a plausible RLUIPA claim, he could not assert that claim against the jail defendants (or any other defendants), in their individual capacities, because "there is no cause of action under RLUIPA for individual-capacity claims." Stewart v. Beach, 701 F.3d 1322, 1335 (10th Cir. 2012).  Rather, "by its plain terms, RLUIPA applies to a 'government.'"  Id. at 1333.[27] Fifth, to the extent Lemmons asserts state law claims against the jail defendants, under the ORFA and Article I, § 2 of the Oklahoma Constitution for the alleged denial of his kosher meals, he fails to state plausible claims for relief against them for the same reasons that he fails to state plausible First Amendment and RLUIPA claims.  See Beach, 398 P.3d at 5-6 & n.20 (discussing the ORFA, noting that the ORFA defines the exercise of religion in the same manner as Article I, § 2 of the Oklahoma Constitution and the First Amendment, and noting that the language in the ORFA is "almost identical" to the language in the RLUIPA). For these reasons, Lemmons does not state any plausible First Amendment or RLUIPA claims, or any plausible related state law claims, against the jail defendants.[28]

---

[27] To the extent the federal complaint could be construed as asserting RLUIPA claims against any other defendants, in their individual capacities, the Court dismisses the federal complaint in part, under § 1915(e)(2)(B)(ii), as to any RLUIPA claims asserted against any defendants, in their individual capacities.

[28] As previously noted, Lemmons appears to assert only state law claims against Wagoner, in the state petition, for the alleged violations of Lemmons's religious rights, including his purported statutory right to a bible of his choice under OKLA. STAT. tit. 57, § 5.  To the extent Lemmons asserts ORFA and state constitutional claims against Wagoner, those claims fail for the reasons just discussed.  And, to the extent Lemmons asserts a statutory-right-to-bible claim against Wagoner, the GTCA bars relief as to that claim for the reasons discussed below.  See, infra, section III.C.3.d.  The Court therefore concludes that all claims asserted against Wagoner in the state petition shall be dismissed under § 1915A(b) and that Wagoner shall be terminated as a party.

**d.     Conclusion as to jail defendants**

For the reasons stated, the Court concludes that Lemmons states no plausible federal or state law claims against the jail defendants.[29]  The Court therefore grants the jail defendants' motion to dismiss (Dkt. # 58, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL); dismisses the federal complaint in part, under Rule 12(b)(6), as to all federal claims asserted against the jail defendants; and dismisses the federal complaint in part, under § 1915(e)(2)(B)(ii), as to all state law claims asserted against the jail defendants.

**3.     County defendants' motions to dismiss**

Lemmons identifies two county defendants, Sheriff Varnell and Commissioner Skidgel, as defendants in both pleadings and purports to assert federal claims against them in their individual capacities and their official capacities.  Dkt. # 26, at 3, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 1, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL. Lemmons identifies the two remaining county defendants—the Pawnee County Sheriff's Office and the Board—as defendants only in the state petition.  Dkt. # 2-2, at 1, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.

The county defendants move to dismiss all federal claims in the state petition, under Rule 12(b)(6), for four reasons.  They contend:  (1) that the Pawnee County Sheriff's Office is not a suable entity; (2) that Lemmons does not state any plausible official-capacity claims against the Board, Commissioner Skidgel, or Sheriff Varnell; (3) that Lemmons does not state any plausible individual-capacity claims against Sheriff Varnell or Commissioner Skidgel; and (4) that Sheriff Varnell and Commissioner Skidgel have qualified immunity as to any individual-capacity claims.

---

[29] Further, as discussed below, even if Lemmons could state plausible state law claims against the jail defendants, those claims would be dismissed as barred by the GTCA.  See, infra, section III.C.3.d.

Dkt. # 15, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.  The county defendants move to dismiss all state law claims in the state petition, under Rule 12(b)(1) and 12(b)(6), asserting that Lemmons did not comply with the GTCA's notice and filing provisions and that they are immune from suit for all state law claims under the GTCA.  Id.

Commissioner Skidgel moves to dismiss all federal claims in the federal complaint, under Rule 12(b)(6), asserting that Lemmons states no plausible claims against him, in any capacity. Dkt. # 46, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.

Sheriff Varnell moves to dismiss all federal claims in the federal complaint, under Rule 12(b)(6), for three reasons.  He contends:  (1) that Lemmons does not state any plausible individual-capacity claims against him; (2) that Lemmons does not state a plausible First Amendment free exercise claim; and (3) that Lemmons does not state a plausible Fourteenth Amendment deliberate indifference claim against him based on the alleged denial of medical care. Dkt. # 53, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.

For the following reasons, the Court grants the county defendants' motion, grants Commissioner Skidgel's motion, and grants Sheriff Varnell's motion.

### a.      Pawnee County Sheriff's Office

First, the Court agrees that the state petition should be dismissed as to any federal claims in the state petition that are asserted against the Pawnee County Sherrif's Office ("PCSO") because a sheriff's office is not a suable entity in a § 1983 action.  See Dkt. # 43, at 1-2, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL (denying Lemmons's request to add the PCSO as a defendant in the federal action and explaining that the PCSO is not a proper defendant as to any § 1983 claims).  Further, to the extent Lemmons sued the PCSO to hold Pawnee County liable for any alleged violations of his rights under state law, he effectively sued Pawnee County by asserting

claims against the Board and against Sheriff Varnell in his official capacity.  Porro, 624 F.3d at 1328; see also OKLA. STAT. tit. 19, § 4 (providing that a county may be sued by naming the board of county commissioners or an appropriate county official as a defendant).

### b.      Claims against the Board and Skidgel

Second, the Court does not construe either pleading as asserting any plausible federal claims against the Board or Commissioner Skidgel.  In the state petition, Lemmons mentions the Board and Commissioner Skidgel only when he identifies them as defendants.  Dkt. # 2-2, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.  Likewise, in the federal complaint, Lemmons mentions Commissioner Skidgel only when he identifies him as a defendant.  Dkt. # 26, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  None of the allegations in the body of either pleading identifies any actions or omissions of Commissioner Skidgel.  This alone is reason enough to dismiss all claims asserted against Commissioner Skidgel because Lemmons's allegations do not provide Commissioner Skidgel fair notice of the claims against him.  Robbins, 519 F.3d at 1250.  The only allegation with any nexus to the Board and, arguably, to Commissioner Skidgel is found in count IV of the federal complaint when Lemmons alleges that the Board "refused to address" plumbing problems at the jail and refused to hire a licensed plumber.  Dkt. # 26, at 10, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL.  This Court previously determined that Lemmons's broad allegations in count IV of the federal complaint failed to state a plausible Fourteenth Amendment due process claim against any defendants, in any capacity.  See, supra, II.B.3.  His allegation that the Board refused to hire a plumber likewise fails to plausibly allege a constitutional harm under the Fourteenth Amendment's due process clause.

On the facts alleged in the federal complaint and the state petition, Lemmons states no plausible federal claims against the Board or Commissioner Skidgel.[30]

### c.    Claims against Sheriff Varnell

In both pleadings, Lemmons makes allegations against Sheriff Varnell, but he does not clearly identify which claims he asserts against Sheriff Varnell. In the federal complaint, Lemmons alleges (1) that Sheriff Varnell did not respond to grievances about the alleged denial of Lemmons's religious rights; (2) that the Sheriff's Department does not adequately train or supervise jail staff; (3) that that jail has a policy about prescription medications; (4) that "officials at the jail" allowed Lemmons to be taken off of medications without sufficient tapering off, resulting in severe withdrawals and seizures; (5) that the Sheriff's Department refused to send Lemmons to a follow-up medical appointment and refused to give him prescribed medication after he returned to the jail following his hospital visit in January 2023; (6) that unqualified "jail administrators" exposed Lemmons to substandard conditions at the jail; and (7) that Sheriff Varnell did not respond to

---

[30] Lemmons may have named the Board and Commissioner Skidgel as defendants to impose liability against Pawnee County for the alleged civil rights violations. Porro, 624 F.3d at 1328; see also OKLA. STAT. tit. 19, § 4 (providing that a county may be sued by naming the board of county commissioners or an appropriate county official as a defendant). But Lemmons's claims arise from alleged deficiencies in the daily operation of the Pawnee County Jail—specifically, deficiencies in protecting him from the use of excessive force by a detention officer, protecting his rights to freely exercise his religion, providing him adequate medical care, and maintaining humane living conditions. Even accepting Lemmons's allegations as true, each of his claims concern specific areas within Sheriff Varnell's control as "the [Pawnee] County official charged with managing the jail." Burke v. Regalado, 935 F.3d 960, 1001 (10th Cir. 2019). Thus, to the extent the federal complaint could be reasonably construed as asserting any Monell claims against Pawnee County, Lemmons's claims are more appropriately asserted against Sheriff Varnell, not the Board or Commissioner Skidgel. See OKLA. STAT. tit. 19, §§ 513, 513.1, 513.2; Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of Cleveland Cnty., 237 P.3d 134, 142 (Okla. 2010) ("Under Oklahoma law, the sheriff is the final policymaker for a county jail. The sheriff, and not the [Board], is responsible for medical care in Oklahoma."). Because Lemmons also identifies Sheriff Varnell as a defendant and purports to sue him in his official capacity, the Court further finds that all official-capacity claims asserted against the Board and Commissioner Skidgel should be dismissed as redundant with the official-capacity claims asserted against Sheriff Varnell.

grievances about the jail conditions.  Dkt. # 26, at 6-9, 19, <u>Lemmons v. Grove-Miller, et al.</u>, No. 23-CV-0019-CVE-CDL.   In the state petition, Lemmons alleges (1) that Sheriff Varnell was notified after Grove-Miller shot Lemmons with a taser gun for no reason; (2) that "jail administrators" denied him his religious rights; (3) that "officials at the jail" allowed Lemmons to be taken off of medications without sufficient tapering off, resulting in severe withdrawals and seizures; and (4) that the Sheriff's Department refused to send Lemmons to a follow-up medical appointment and refused to give him prescribed medication after he returned to the jail following a hospital visit in January 2023.  Dkt. # 2-2, at 1-4, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL.

### i.      Individual-capacity claims

On the facts alleged, Lemmons does not state any plausible individual-capacity claims against Sheriff Varnell.  Lemmons's most specific allegations suggest that Sheriff Varnell did not respond to Lemmons's grievances.  Even if true, the failure to respond to grievances does not implicate any federal constitutional protections.  <u>See</u> e.g., <u>Boyd</u>, 443 F. App'x at 332; <u>Buckley</u>, 997 F.2d at 495; <u>Greer</u>, 568 F. Supp. at 1375.  Lemmons's remaining allegations are general and conclusory and do not plausibly suggest that Sheriff Varnell either personally participated in any of the alleged violations of Lemmons's federal constitutional rights or that he acted with a sufficiently culpable state of mind in his capacity as a supervisor so that he could be held personally liable for any actions of subordinate jail officials or employees.  <u>Brown</u>, 662 F.3d at 1164.

### ii.      Official-capacity claims

To the extent Lemmons asserts his First Amendment free exercise or RLUIPA claims against Sheriff Varnell, in his official-capacity, Lemmons fails to state any claims on which relief could be granted because each claim is premised on Lemmons's implausible allegations that Steele

denied his requests for kosher meals.  Any official-capacity claims that Lemmons asserts against Sheriff Varnell are claims against Pawnee County.  Porro, 624 F.3d at 1328.  "Sometimes [a] municipality's failures are the driving force behind a constitutional violation by a specific municipal employee.  A failure-to-train claim is an example of [this] type of § 1983 claim[] against" a municipality.  Crowson v. Wash. Cnty. Utah, 983 F.3d 1166, 1186 (10th Cir. 2020).  But, in most cases, "a claim against a municipality may never lie where none of the municipality's individual officers are liable under § 1983."  Id.  And Lemmons's allegations demonstrate that this case is like most cases.  Notwithstanding Lemmons's bold (and speculative) assertion that the "Pawnee County Sheriff's Office fails to adequately train and supervise any of its jail staff and will hire any warm blooded individual that can perform/provide a service, presumptively without proper background checks," Dkt. # 26, at 6, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL, this is not a failure-to-train case.  Instead, Lemmons's official-capacity claim against Sheriff Varnell for the alleged First Amendment violation fails because his allegations do not support an underlying constitutional violation by Steele.  See, supra, section II.C.2.c.  Likewise, Lemmons has not shown that Pawnee County could be liable for a RLUIPA violation based on Steele's alleged conduct.  Id.

To the extent Lemmons asserts his Fourteenth Amendment excessive force claim, or state law tort claim for battery, against Sheriff Varnell, in his official capacity, he does not state a plausible claim.  As previously discussed, Lemmons's allegations plausibly state a Fourteenth Amendment excessive force claim against Grove-Miller, in his individual capacity.  See, supra, section III.C.2.b.  But none of the allegations in either pleading plausibly suggests that Grove-Miller's action was motivated by a county policy, custom, or persistent practice.  Rather, Lemmons's allegations suggest the opposite.  Lemmons alleges that two detention officers—

Hawthorne and Dennis—witnessed the tasering incident, tried to help Lemmons, described Grove-Miller's use of force as "uncalled for," and promptly reported the incident to Undersheriff Mahoney and Sheriff Varnell.  Dkt. # 26, at 11, 13, 23, Lemmons v. Grove-Miller, et al., No. 23-CV-0019-CVE-CDL; Dkt. # 2-2, at 1, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.  Lemmons further alleges that Grove-Miller was "terminated for his actions," reasonably suggesting that his action was determined to be contrary to applicable county policies.  Dkt. # 2-2, at 1, Lemmons v. Melody, et al., No. 23-CV-0503-CVE-CDL.  Under these facts, Lemmons's purported Monell claim based on Grove-Miller's use of force is not plausible.  See Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 403 (explaining that a county "may not be held liable under § 1983 solely because it employs a tortfeasor").

To the extent Lemmons asserts the Fourteenth Amendment due process claim alleged in count IV of the federal complaint against Sheriff Varnell, in his official capacity, he fails to state a claim for the reasons previously discussed.  See, supra, section II.B.3

Lastly, to the extent Lemmons asserts the Fourteenth Amendment deliberate indifference claims alleged in count III of both pleadings against Sheriff Varnell, in his official capacity, he fails to state a claim.  Sheriff Varnell is the final policymaker for the Pawnee County Jail and he is the county official responsible for ensuring that pretrial detainees have access to medical care.  See Estate of Crowell, 237 P.3d at 142 ("Under Oklahoma law, the sheriff is the final policymaker for a county jail.  The sheriff, and not the [Board], is responsible for medical care in Oklahoma.").  However, as previously discussed, Lemmons's allegations, accepted as true, do not state any plausible Fourteenth Amendment deliberate indifference claims against the Turn Key defendants.  See, supra, section III.C.1.  Without a plausible constitutional violation by Turn Key, Martin, or Collins regarding the provision of medical care at the jail, Lemmons states no plausible Monell

claims against Sheriff Varnell.  See Crowson, 983 F.3d at 1186 ("[A] claim against a municipality may never lie where none of the municipality's individual officers are liable under § 1983.").

For these reasons, Lemmons states no plausible federal claims against Sheriff Varnell, in his official capacity, and states no plausible state law claims for the tort of battery or for the alleged violations of Lemmons's religious rights against Sheriff Varnell, in his official capacity.

### d.      State law claims

In both pleadings, Lemmons asserts various state law claims against defendants without specifying which claims he asserts against which defendants.  For reasons previously discussed, may of those state law claims do not withstand the moving defendants' Rule 12(b)(6) challenges. To the extent any state law claims remain against any county defendants, jail defendants, Grove-Miller, Hawthorne, and Wagoner, the Court finds that that all but one of these defendants is immune from suit under the GTCA.

In Oklahoma, the GTCA "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort."  Tuffy's, Inc. v. Okla. City, 212 P.3d 1158, 1163 (Okla. 2003).  As defined in the GTCA, a "tort" is "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person . . . as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment."  OKLA. STAT. tit. 51, § 152(17); see also Barrios v. Haskell Cnty. Public Facilities Auth., 432 P.3d 233, 238 (Okla. 2018) (explaining that the Oklahoma Legislature amended the GTCA in 2014 "to specify that the [s]tate's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights").  Under the GTCA, a county is a political subdivision of the state.  OKLA. STAT. tit. 51, § 152(11)(c).

The GTCA immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts.  OKLA. STAT. tit. 51, § 152.1(A).  This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the GTCA.  OKLA. STAT. tit. 51, § 152.1(B).  And the GTCA expressly exempts from tort liability, and thus does not waive sovereign immunity as to, certain claims asserted against the state and its political subdivisions.  OKLA. STAT. tit. 51, § 155; see Salazar v. Okla. City, 976 P.2d 1056, 1066 ("The legislature kept in force certain forms of immunity from liability by providing in § 155 [a number of] carefully circumscribed exemptions.").  Critically, the GTCA provides that the state and its political subdivisions are exempt from liability for torts, including "constitutional" torts, arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility."  OKLA. STAT. tit. 51, § 155(25); Barrios, 432 P.3d at 239.  The Oklahoma Supreme Court has explained that this exemption

> withhold[s] the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution, including the construction and repair of the facility; the security of the facility; the employment of personnel; the utilities and furnishings of the facility; the food, clothing, items for hygiene and other basic personal items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational and medical and health services or any other service provided for inmates or other persons; the assignment of an inmate to a facility or a cell; and the release of an inmate; with the single exception of loss to persons not in custody caused by an accident involving a motor vehicle operated by the Department of Corrections.

Medina v. State, 871 P.2d 1379, 1384 n.13 (Okla. 1993); see also Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1147 (10th Cir. 2023) ("An employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability under the OGTCA.").

On the facts alleged, the county defendants, the jail defendants, Hawthorne, and Wagoner are clearly immune from suit under the GTCA as to any remaining state law claims asserted against them because no allegations in either pleading plausibly suggest that any of these defendants were acting outside the scope of their employment regarding their interactions, if any, with Lemmons. Tuffy's, Inc., 212 P.3d at 1163 (explaining that "'[s]cope of employment' is defined as performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority"). However, as previously discussed, the facts alleged show that Grove-Miller may have acted outside his scope of employment when he allegedly used a taser gun against Lemmons for no reason. See id. ("Governmental accountability is extended to torts for which a private person would be liable, unless they are committed outside of the course and scope of employment or unless they are committed in bad faith or in a malicious manner."). Because this Court has determined that Lemmons states a plausible Fourteenth Amendment excessive force claim and a plausible state law tort claim for battery against Grove-Miller, Lemmons may proceed against Grove-Miller as to those claims. And the Court declines to determine, at this stage of the litigation, whether the GTCA bars Lemmons's battery claim against Grove-Miller.

In sum, to the extent any state law claims remain and are asserted against the county defendants, the jail defendants, Hawthorne, or Wagoner, the GTCA immunizes these defendants as to those claims. Except for Grove-Miller, these defendants are clearly immune from suit under the GTCA as to all state law claims asserted against them. The Court therefore dismisses the federal complaint in part, under § 1915A(b).

### e.   Conclusion as to county defendants

Based on the foregoing analysis, the Court concludes that Lemmons states no plausible federal or state law claims against the county defendants.  The Court therefore grants the county defendants' motion to dismiss (Dkt. # 15, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL); dismisses the state petition in part, under Rule 12(b)(6), as to all federal and state law claims asserted against the county defendants; and terminates the PCSO as a party.

Further, the Court grants Commissioner Skidgel's motion to dismiss (Dkt. # 46, <u>Lemmons v. Grove-Miller, et al.</u>, No. 23-CV-0019-CVE-CDL); grants Sheriff Varnell's motion to dismiss (Dkt. # 53, <u>Lemmons v. Grove-Miller, et al.</u>, No. 23-CV-0019-CVE-CDL); and dismisses the federal complaint in part, as to all federal and state law claims asserted against Commissioner Skidgel and Sheriff Varnell.[31]

*** 

**IT IS THEREFORE ORDERED** that the motion to dismiss filed by defendant Kevin Stitt (Dkt. # 20, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL) and the motion to dismiss filed by defendant Gentner Drummond (Dkt. # 21, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL) are **denied as moot**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Malachi Martin and Melody Collins (Dkt. #51, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL) is **granted**.

---

[31] Because the Court concludes that the federal complaint shall be dismissed as to all claims asserted against Commissioner Skidgel and Sheriff Varnell, the Court does not address their alternative arguments for dismissal of the federal complaint based on insufficient service of process.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendant Turn Key Health Clinics, LLC (Dkt. # 7, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL) is **granted**.

**IT IS FURTHER ORDERED** that the motion to quash service filed by defendant Malachi Martin (Dkt. # 8, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL ) is **denied as moot**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Cameron Dennis, Nick Mahoney, and Jimmy Steele (Dkt. # 58, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL) is **granted**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Pawnee County Board of Commissioners, Pawnee County Sheriff's Office, Darrin Varnell, and Jerry Skidgel (Dkt. # 15, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL) is **granted**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendant Jerry Skidgel (Dkt. # 46, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL) is **granted**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendant Darrin Varnell (Dkt. # 53, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL) is **granted**.

**IT IS FURTHER ORDERED** that the **federal complaint** (Dkt. # 26, <u>Lemmons v. Grove-Miller et al.</u>, No. 23-CV-0019-CVE-CDL) and the **state petition** (Dkt. # 2-2, <u>Lemmons v. Melody, et al.</u>, No. 23-CV-0503-CVE-CDL) are **dismissed, in part**, as to **all federal and state law claims** asserted against: (1) Jerry Skidgel, (2) Darrin Varnell, (3) Detention Officers; (4) William Hawthorne; (5) Cameron Dennis; (6) the City of Pawnee; (7) Nick Mahoney; (8) Jimmy Steele; (9) Melody Collins; (10) Malachi Martin; (11) Gentner Drummond; (12) the Administrative Head of State; (13) Turn Key Health Clinics, LLC; (14) Kevin Stitt; (15) the Pawnee County Board of Commissioners; (16) the Attorney General of Oklahoma; (17) the Office of Risk Management and

Enterprise Service; (18) the State of Oklahoma; (19) the Pawnee County Sheriff's Office; (20) Janet Morrow; and (21) Johnny Wagoner.

       **IT IS FURTHER ORDERED** that defendants/consolidated defendants (1) Jerry Skidgel, (2) Darrin Varnell, (3) Detention Officers; (4) William Hawthorne; (5) Cameron Dennis; (6) the City of Pawnee; (7) Nick Mahoney; (8) Jimmy Steele; (9) Melody Collins; (10) Malachi Martin; (11) Gentner Drummond; (12) the Administrative Head of State; (13) Turn Key Health Clinics, LLC; (14) Kevin Stitt; (15) the Pawnee County Board of Commissioners; (16) the Attorney General of Oklahoma; (17) the Office of Risk Management and Enterprise Service; (18) the State of Oklahoma; (19) the Pawnee County Sheriff's Office; (20) Janet Morrow; and (21) Johnny Wagoner are **terminated** as parties.

       **IT IS FURTHER ORDERED** that Lemmons **may proceed** in this consolidated action as to the following claims:  (1) the Fourteenth Amendment excessive force claim asserted against Doug Grove-Miller, in his individual capacity and (2) the state law tort claim for battery asserted against Doug Grove-Miller.

       **DATED** this 10th day of September, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE